UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| REC MARINE LOGISTICS, LLC | § | C.A. NO. 2:19-cv-11149-LMA-DMD |
| | § | |
| V. | § | |
| | § | |
| DEQUINCY R. RICHARD | § | SEC. "I"    MAG. (3) |
| | § | |
| V. | § | |
| | § | |
| REC MARINE LOGISTICS, LLC, | § | |
| GULF OFFSHORE LOGISTICS LLC and | § | |
| OFFSHORE TRANSPORT SERVICES, LLC | § | |

## RICHARD'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW INTO COURT, through undersigned counsel, comes Defendant/Counter/Third-Party Plaintiff DeQuincy Richard ("Richard"), and respectfully moves this Honorable Court for an Order sanctioning Plaintiff/Counter-Defendant REC Marine Logistics, LLC ("REC Marine") and its counsel Fred B. Salley ("Salley") for conduct that occurred both during the recent deposition of REC Marine and previously in this case, as set forth below:

### I. BACKGROUND

On November 6, 2018, while Richard was performing his duties in the service of the *Dustin Danos*, he sustained severe injuries on a vessel owned, operated, and/or crewed by REC Marine and Third-Party Defendants Gulf Offshore Logistics LLC and Offshore Transport Services, LLC. On the day of the incident, Richard was helping the captain tie-down the vessel at a platform in the Gulf of Mexico. As he descended a set of defective metal stairs on the back of the vessel, the grating that comprised one of the steps shifted. As a result, Richard was thrown to the deck of the vessel, losing consciousness on impact, and sustaining injuries to his head, neck, back and right shoulder.

REC Marine filed this Complaint for Declaratory Relief on June 11, 2019. On August 8, 2019, Richard filed his Answer to the Complaint for Declaratory Judgment and asserted Counter-Claims against REC Marine and Third Party Claims against Gulf Offshore Logistics LLC and Offshore Transport Services, LLC, bringing claims for negligence, unseaworthiness of the vessel, and maintenance and cure. (Rec. Doc. 4). The Court is well aware of what has transpired since, namely the refusal of REC Marine to produce both relevant documents and its vessel for inspection despite multiple Orders requiring it. For brevity regarding prior discovery-related conduct, Richard incorporates as if fully set forth herein, his Motion to Compel (Rec. Doc. 29), Reply Memorandum in Support (Rec. Doc. 37) and the Court's Order of December 19, 2019, granting Richard's Motion to Compel. (Rec. Doc. 49), as well as Richard's Motion for Attorney's Fees (Rec. Doc. 50) and Reply Memorandum in Support (Rec. Doc. 57).

On December 30, 2019, undersigned counsel took the deposition of REC Marine pursuant to Fed. R. Civ. P. 30(b)(6). (Ex. 2) During the course of this deposition, Salley, REC Marine's counsel, repeatedly engaged in disruptive and improper conduct in violation of the Federal Rules of Civil Procedure, Eastern District of Louisiana Civil Local Rule 83.2.3, the Louisiana State Bar Association Code of Professionalism, and the Rules of Professional Conduct of the Louisiana State Bar Association, including the following:

- 145 interruptions during questioning

- 16 instructions to the witness not to answer

- 106 objections (52 of which were of a speaking variety)

- 11 instances of counsel interrupting the testimony in order to ask his own questions while the witness was still on cross examination

Ex. 1.

Not that it should be required, but Richard's counsel repeatedly asked Salley to refrain from: speaking objections, coaching the witness, and interruption of questioning. Salley nonetheless continued to deliberately disrupt the deposition. Undersigned counsel also repeatedly reminded Salley of his obligations to conduct himself in a professional manner. These were systematically ignored. On no less than six occasions during the deposition, Salley practically dared undersigned counsel to go to Court in order to challenge his conduct. Ex. 1. Salley's conduct was so obtrusive to the taking of the deposition that undersigned counsel called Magistrate Douglas's chambers in an attempt to have the conduct addressed during the deposition. Ex. 2, at pp 90:21 - 91:5.

In addition to the unprofessional conduct of its counsel, REC Marine failed to properly prepare its Rule 30(b)(6) designee to testify in response to the matters of examination designated in the deposition notice.

The testimony of the corporate representative that was actually allowed by Salley indicates that: (1) REC Marine was never provided the Interrogatories Richard propounded to REC Marine, to which Salley improperly responded himself; and (2) Salley has made prior representations to this Court that are false.

## II. ARGUMENT & AUTHORITY

There are numerous mechanisms by which district courts exercise sanction powers, including the Federal Rules of Civil Procedure (through Rules 11, 26, 30 and/or 37); 28 U.S.C. §1927; and the inherent power of the courts to manage their own proceedings and to control the conduct of those

who appear before them. Regardless of the source, it is widely accepted that the primary purpose of sanctions is to deter frivolous litigation and abusive tactics. Sanctions seek to deter both the culpable attorney and members of the bar in general. *See, e.g., Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126-27, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989)(the primary purpose of Rule 11 is deterrence, not compensation); *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988)("the most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive practices of attorneys"); Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse §47(A) (2d ed.)(the purpose of Rule 37 is four-fold: "(1) penalizing the culpable party or attorney; (2) deterring others from engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery"); *Id.* at §20 (the purpose of 28 U.S.C. §1927 is to deter unnecessary delays in litigation). "One court recently put it more succinctly: **'The purpose of court-imposed sanctions is to stop reinforcing winning through obstruction**.'" *Tajonera v. Black Elk Energy Offshore Operations, LLC*, 2015 U.S. Dist. LEXIS 26025 * 14 (E.D. La., March 3, 2015), *citing Security National Bank of Sioux City, Iowa v. Abbott Laboratories*, 299 F.R.D. 595, 597 (N.D. Iowa 2014) (emphasis added).

Whether a district court wields it sanction powers under the Federal Rules of Civil Procedure, 28 U.S.C. §1927, or its inherent power, it does so at its broad discretion. *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993). "The discretion vested in the trial court is granted so its thoughtful exercise will carry out the educational and deterrent functions of the rule." *Jennings v. Joshua I.S.D.*, 948 F.2d 194, 199 (5th Cir. 1991), cert. denied, 504 U.S. 956, 112 S. Ct. 2303, 112 S. Ct. 2304, 119 L. Ed. 2d 226 (1992).

**A.      Salley's unprofessional conduct during the deposition of REC Marine**

Because the present Motion concerns in part Salley's conduct during a deposition, it is properly analyzed under Federal Rule of Civil Procedure 30 and the cases construing it. Rule 30(c)(1) provides that "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence...." Fed.R.Civ.P. 30(c)(1). "During the taking of a deposition the witness has, in general, the same rights and privileges as would a witness testifying in court at a trial." 8A Wright, Miller and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994). It is well-established — and should be equally well-understood by a federal practitioner such as Salley — that:

> [a]s officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom. Thus, the witness is placed under oath and a court reporter is present. Conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition .... A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.

*Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-CV-3209, 2011 U.S. Dist. LEXIS 156453, 2011 WL 164636 at *5 (E.D. La. Jan. 19, 2011)(*citing Ethicon Endo—Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995)).

Under Rule 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed.R.Civ.P. 30(d)(2). As discussed in detail below, Salley violated these rules, and the Louisiana Rules of Professional Conduct, during the

deposition of REC Marine.  The impact of Salley's sub-standard conduct in this case is exacerbated by the numerous occasions in this case alone when he has violated Orders of the Court regarding discovery.

A review of the deposition transcript by the Court will be instructive. In a transcript totaling 255 pages in a deposition he was defending, Salley appears on an astonishing 170 pages.  *See* Ex. 2.  Salley objected 106 times, of which on 52 occasions he refused to merely note his objection on the record, instead using the opportunity to make a speaking objection. *Id.*, Ex. 1.  The result is a deposition transcript polluted with verbose and improper objections, argumentative and condescending lecturing of opposing counsel, and pervasive obstruction.  *Id.* Page upon page of unending speaking objections and improper instructions to the witness greet the reader of this transcript. *Id.* There are objections so long that they cover entire pages of the transcript.  One speaking objection and inappropriate argument following a question asking the deponent when an affidavit was signed covers in excess of six pages of the transcript.  Ex. 2, pp 209:10-215:24. Throughout the deposition, undersigned counsel repeatedly asked Salley to stop making speaking objections, to no avail — Salley persisted.  The omnipresence of his lengthy objections and speeches make the deposition often unreadable and virtually useless for any legitimate purpose at trial.  As shown below, Salley impeded, delayed, and frustrated the fair examination of the deponent.

### 1.    Improper objections

"The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence." Fed. R. Civ. P. 30(c)(1). An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  Fed. R. Civ. P. 30(c)(2); *see Bordelon Marine, Inc. v. F/V Kenny Boy*, No. 09-3209, 09-6221, 2011 U.S. Dist. LEXIS 156453, 2011 WL 164636, at

*5-*6 (E.D. La. Jan. 19, 2011) (finding violation of Rule 30(c) where the majority of objections were inappropriate).  There can be little doubt that both the voluminous number of objections, as well as the speaking variety included within, was solely an attempt by Salley to insert himself obtrusively into this deposition.  This is not an example of an attorney protecting the record.  The deposition transcript evidences the attorney deciding to make the deposition about himself.  Salley made 106 objections during the deposition of REC Marine.  Ex. 1; Ex. 2.  Out of the 106, 52 of them are properly characterized a speaking objection: either in an attempt to coach the witness or in an attempt to sidetrack opposing counsel.  *Id.*  What resulted was an examination of a witness that in no way proceeded as it would (or should) at trial of this matter.

### 2.    Instructing the witness not to answer

 "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Rule 30(c)(2); *see Offshore Marine Contractors*, 2013 U.S. Dist. LEXIS 50299, 2013 WL 1412197, at *3-*4.  "Directions to a deponent not to answer a question can be even more disrupting than objections."  Rule 30, 1993 Advisory Committee note.

Salley improperly instructed the witness not to answer at least 16 times during the deposition. (Ex. 1).  For example:

- Can you identify for me what Mr. Richard was doing at the time that he was injured?  Ex. 2, 62:21-63:5
- Was Mr. Richard doing anything that he was not supposed to be doing at the time that he was injured?  *Id.* at 65:3-25
- Prior to June 11, 2019, is REC Marine aware of a maintenance and cure claim being brought by Dequincy Richard?  *Id.* at 77:24-79:18
- Can you identify for me all the documents that support REC Marine's allegation that Richard did not have an injury on nor fall ill in the service of the vessel?  *Id.* at 85:15-86:10

- Sir, can you identify for me all of the information that's available to REC Marine that supports REC Marine's allegation that Richard did not have an injury on nor fall ill in the service of the vessel? *Id.* at 86:12-86:20

### 3. Interrupting questions / coaching the witness

As the Court is well aware, "[c]onduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition ...." *Bordelon Marine*, 2011 U.S. Dist. LEXIS 156453, 2011 WL 164636 at *5. "The Federal Rules of Evidence contain no provision allowing lawyers to interrupt the trial testimony of a witness to make a statement. Such behavior should likewise be prohibited at depositions, since it tends to obstruct the taking of the witness's testimony." *Hunter v. GEICO Gen. Ins.* Co., 2018 U.S. Dist. LEXIS 155335 at *24 (E.D. La. Sept. 12, 2018) *quoting Hall v. Clifton Precision, a Div. of Litton Systems, Inc.*, 150 F.R.D. 525, 530-531 (E.D. Pa. 1993):

> The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. **There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers**. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness. As an advocate, the lawyer is free to frame those facts in a manner favorable to the client, and also to make favorable and creative arguments of law. But the lawyer is not entitled to be creative with the facts. Rather, a lawyer must accept the facts as they develop.

*Hall*, 150 F.R.D. at 528 (emphasis added).

Despite the clear rules regarding what is allowed by the defending attorney during a deposition, Salley believes differently, as illustrated by the below:

Q:  Prior to June 11, 2019, are you aware of Mr. Richard making a demand for maintenance and cure?

MR. SALLEY:  Do you mean him, personally?

MR. RHINE: I mean, REC Marine, Fred.  Every time I say "you", I mean REC Marine, just so we're clear, sir.

MR. SALLEY: All right.  Sir, unless you are clear that you know that --

MR. RHINE: Stop coaching the witness, please.

MR. SALLEY:  -- just decline to answer.

MR. RHINE: Stop coaching the witness.

MR. SALLEY: He's my witness under a 30(b)(6).  I'm entitled to communicate with my representative witness.

**MR. RHINE: You believe the Federal Rules of Civil Procedure give you the authority to interrupt my deposition and coach your witness as to how you want him to respond.**

**MR. SALLEY: I certainly do, because it's a 30(b)(6) deposition.**

**MR. RHINE: All right.  We'll take that up with the Court.**

**MR. SALLEY: You are pleased to do so.**  You want to ran over there now?  I mean, we'll stop this.  And you can go to the Court now.

Ex. 2, pp 80:7 - 81:22 (emphasis added).

### 4.  Salley interjected his own questioning during the examination

"The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence." Fed. R. Civ. P. 30(c)(1). Salley believes that the Federal Rules of Civil Procedure allow him to interrupt the cross examination of the witness in order to ask his own questions.  He interrupted the testimony on eleven separate occasions in order to insert his own questions into the record.  Salley appears to believe that in a 30(b)(6) deposition he is allowed to do so:

Q       Okay. Who was REC Marine performing work for, what entity?

A       Talos Energy, maybe.

Q        Do you know, or are you guessing?

MR. SALLEY:  Is it in the logs?

MR. RHINE: Fred, it's my depo. I'll --

MR. SALLEY: It's a 30(b)(6) representative deposition, counsel. Understand what that means.

Ex. 2, pp 106:7-18. As the Court is well aware, the Federal Rules of Civil Procedure do not authorize this manner of questioning at trial, nor is it allowed during a deposition.

### B. Failing to prepare the witness

Rule 30(b)(6) provides that after an organization's deposition has been noticed, "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.* Such persons "***must*** testify about information known or reasonably available to the organization." *Id.* (emphasis added). Because a corporation appears vicariously at such depositions through an agent, "[i]f that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). "This extends not only to facts, but also to subjective beliefs and opinions." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 & n.18 (5th Cir. 2006).

As the designating party, REC Marine had the burden to "designate knowledgeable representatives and/or take appropriate steps to prepare such designees." *Johnson v. Big Lots Stores, Inc.*, No. CIV.A. 04-3201, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008). Furthermore, "[t]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)). Thus, REC Marine was not required to present someone with pre-existing personal knowledge of the noticed topics, but it did have to present an individual that had prepared to testify on behalf of the corporation on all of the topics requested.

10

The deposition testimony of Blaine Russell makes clear that the company did not adequately prepare him for deposition. In order to prepare for his testimony, Mr. Russell reviewed the list of topics included with the REC Marine deposition notice. Ex. 2, 27:9-28. Other than requesting another individual at the company provide a copy of the incident report, Mr. Russell spoke with no one to prepare to testify. *Id.*, 28:6-21. The deponent did not speak with the Captain of the vessel at the time Mr. Richard was injured. *Id.*, 32:9-15. He also failed to visit with the port captain in order to insure he had all of the information and knowledge held by REC Marine regarding the various topics. *Id.*, 32:24-33:1. He did not speak with any of the personnel that were on the vessel at the time of the incident. *Id.*, 33:2-5. He did not speak with the REC Marine Personnel Manager who hired Mr. Richard. *Id.*, 53:21-54:1. The deponent failed to review any of the discovery in the lawsuit. *Id.*, 39:4-24. He failed to ask anyone at REC Marine what operations the vessel was performing on the date of the incident. *Id.*, 62:17-20. Mr. Russell failed to review any documents regarding repairs made to the vessel after the incident. *Id.*, 156:22 - 157:3.

During the deposition, the lack of knowledge as a result of the above became clear. The deponent:

- Did not know what training Mr. Richard received prior to the incident. *Id.*, 49:5-18.
- Did not know if Mr. Richard ever reviewed the safety manual. *Id.*, 50:15-21.
- Did not know what orientation Mr. Richard underwent prior to going offshore. *Id.*, 50:15-21.
- Did not know if there was a safety meeting on the date of the incident. *Id.*, 68:11-14.
- Did not know if Mr. Richard had performed this particular work before. *Id.*, 69:5-7.
- Did not know if a JSA was done. *Id.*, 69:15-21.
- Was unable to identify anything that was done during an alleged investigation of Richard's demand for maintenance and cure. *Id.*, 93:1-23.

- Did not know where the vessel was located at the time of the incident. *Id.*, 151:11-13.
- Did not know what medical treatment Mr. Richard received on the vessel. *Id.*, 153:10 - 154:4.
- Did not know who the four crew members on the vessel were on the date of the incident. *Id.*, 155:24 - 156:2.
- Did not know what repairs have occurred on the vessel since the incident. *Id.*, 160:23 - 161:5.
- Did not know what instructions were given to Mr. Richard by the captain on the vessel. *Id.*, 161:12-17.
- Did not know if REC Marine is currently paying maintenance and cure benefits to Mr. Richard. *Id.*, 176:8-11.

Despite the Rules, REC Marine's designee, Mr. Russell, was unable to testify to issues that were within the corporate knowledge of REC Marine.

### C.    REC Marine's failure to respond to Interrogatories

On October 3, 2019, Richard served his first set of interrogatories on REC Marine. Ex. 3. On October 21, 2019, REC Marine provided its answers to Richard's interrogatories. Ex. 4. Mr. Russell is the manager at REC Marine who responds to discovery on behalf of the company. Ex.2, p. 140:9-19. Despite this he had never seen the Interrogatories before. *Id.* at p. 140:20-22. It became clear that the discovery was not ever actually given to REC Marine for response:

| Q | Who, at REC Marine, answered the interrogatories that were served? |
| A | I'm not aware. I don't know. |
| Q | Okay. Do you know if anyone at REC Marine answered them? |
| A | No, I'm not aware. |
| Q | Who, at REC Marine, would know that? |
| A | I'm not aware. Normally, I would see something like this. |
| Q | I think earlier, you talked about some of your involvement in other lawsuits, how you would receive discovery requests, items related to that. |
| A | Uh-huh. (Affirmative response.) |
| Q | Normally, during your earlier – well, during -- strike that. That's one of the things you do, I guess, as the operations manager, is you facilitate responding to that discovery? |
| A | Correct. |
| Q | All right. Was this discovery ever given to you to facilitate responding to? |

| A | No. |
|---|-----|
| Q | Is there ever an instance when discovery that was answered by REC Marine would be given to someone else, instead of you? |
| A | No. |

Ex. 2, pp 139:25 - 141:2.

Federal Rule of Civil Procedure 33 is very clear as to who must answer interrogatories:

> (1) Responding Party. The interrogatories must be answered:
>     (A) by the party to whom they are directed; or
>     (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

Fed. R. Civ. P. 33(b)(1). Not only were the interrogatories served on REC Marine not answered by REC Marine, but the company never even received them. Salley's actions in not providing his client with the served discovery violated the Federal Rules of Civil Procedure.

### D. Salley's prior misrepresentations to the Court regarding "misplaced" affidavits

On November 12, 2019, REC Marine filed its Memorandum in Response/Opposition to Plaintiff's Discovery Motion. (Rec. Doc. 31). Attached to the filing were two unexecuted affidavits that purported to support the arguments in the Memorandum. (Rec. Doc. 31). Richard filed a Reply Memorandum in Further Support of his Motion to Compel (Rec. Doc. 37). Within this Reply, Richard pointed out that the two evidentiary affidavits were not executed, nor notarized, and requested they be struck by the Court. (Rec. Doc. 37 at p. 3). On November 20, 2019, REC Marine filed an *Ex Parte* Motion requesting time to replace the two affidavits. (Rec. Doc. 41). Importantly, Salley represented to the Court:

> [T]wo witness affidavits intended for filing as exhibits in support of Defendants'
> Opposition to Plaintiff's discovery motion have gone missing, and will have to be
> replaced.

*Id.* Executed versions of the two affidavits were eventually filed. (Rec. Doc. 43)

REC Marine's corporate representative signed one of the two affidavits. However, contrary to the assertions made by Salley, the affidavit never went "missing"–it was simply never executed prior to its initial filing. Despite a lengthy six page speaking objection/argument inserted by Salley, the testimony indicates that no affidavit ever went missing as asserted by Salley. Ex. 2, pp 207:3 - 217:8.

> Q   Sir, you testified earlier that you signed an -- signed an affidavit at one point
>       and took it to a notary?
> A   I took it to the notary and signed it in front of the notary, yes.
> Q   Okay. Where is the notary located?
> A   Right up the road in Raceland, Louisiana.
> Q   Okay.
> A   Right there. (Indicating.) I don't recall her name. I don't know the name of
>       it.
> Q   That's fine. I -- I can look that up if I need. I'm just trying to figure out what
>       you remember.
> A   Okay.
> Q   You received, I guess, the affidavit. And you had to get in your car and go
>       sign it in front of the notary?
> A   Correct.
> Q   How often does that happen for you?
> A   Once every six months.
> Q   Okay. Do you remember this one time where you had to sign and execute
>       this affidavit in front of the notary, correct?
> A   I remember the -- I remember this.
> Q   Do you remember another time where you went and had to execute this
>       affidavit in front of a notary?
> A   I just did it one treatment.

*Id.*, pp 216:2-217:5.

The court has inherent authority to sanction an attorney for improper conduct. *See Blanco River, L.L.C. v. Green*, 457 F. App'x 431, 438 (5th Cir. 2012) (per curiam) (unpublished) (analyzing the sanctions as "imposed pursuant to the court's inherent authority" when the record indicated that Federal Rule of Civil Procedure 11 was not the basis for the sanctions).

**E.     Request for attorney's fees and sanctions for both Salley's and REC Marine's conduct**

Not surprisingly, Salley has a prior history of receiving sanctions from both the Eastern District of Louisiana and the Fifth Circuit Court of Appeals:

- *Pillsbury Co. v. Midland Enterprises, Inc.*, 904 F.2d 317 (5th Cir. 1990) (The court found that the appeal was frivolous because appellants, represented by Salley, presented arguments that were contrary to the law and put forth positions that were not pled or proven at trial. The court assessed double costs and remanded for an award of attorneys' fees to appellees.)

- *Ayala v. Gabriel Bldg. Supply,* 2012 U.S. Dist. LEXIS 172731 (E.D. La. Dec. 5, 2012) ("[Salley]'s actions evince a 'reckless disregard of the duty owed to the court.' *Cf. Baulch*, 70 F.3d at 817. By filing duplicative claims in state court, Plaintiff's counsel wasted the time and resources of both opposing counsel and this Court. Consequently, the Court will impose sanctions under 28 U.S.C. § 1927.")

In additional, Salley's client has now been the subject of two Orders in this case regarding the failure to respond to discovery and provide the vessel for inspection. (Rec. Doc. 23; Rec. Doc. 49). REC Marine, defended by Salley, has also had a Motion to Compel granted against it in Case No. C-682146: *McArthur Griffin v. REC Marine Logistics LLC, et al.*, in the Civil District Court for the Parish of East Baton Rouge. Ex. 5.

**1.     Sanctions for Deposition Conduct**

The plain language of Rule 30(d)(2) provides that the Court may impose on a party who impedes a deposition "an appropriate sanction - including the reasonable expenses and attorney's fees incurred by any party." *Id.* Many courts have construed Rule 30(d)(2) to apply to circumstances

where a party's conduct at a deposition warranted remedial action. *See, e.g, Rangel*, 274 F.R.D. at 594 (improperly instructing deponent not to answer); *Bordelon Marine*, 2011 U.S. Dist. LEXIS 156453, 2011 WL 164636 at *3-*6 (numerous objections to deposition questions); *Pinson v. Northern Tool Equip. Co.*, 2012 U.S. Dist. LEXIS 152623, 2012 WL 5286933, at *3 (S.D. Miss. Oct. 24, 2012) (same). Recent federal court decisions in Louisiana have applied Rule 30's prospective remedy broadly. *See Howell v. Avante Servs., LLC*, No. 12-293, 2013 U.S. Dist. LEXIS 30103, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) (Vance, J.) (finding that payment of attorney's fees for deposition of non-party was an "appropriate sanction" under Rule 30(d)(2)); *Soule v. RSC Equip. Rental, Inc.*, No. 11-2022, 2012 U.S. Dist. LEXIS 150078, 2012 WL 5060059, at *1-*2 (E.D. La. Oct. 18, 2012) (applying Rule 30(d)(2), and ordering parties not only to conduct all future depositions "in a professional manner," as well as enjoining specific conduct);.

Not that it should be needed, but undersigned counsel frequently reminded Salley regarding the conduct that was expected of him as a member of the bar:

> MR. RHINE: Okay. We'll let the Court decide it at a later date. Again, I ask you to only object to form or identify the specific objection. But I don't need speaking objections cluttering up this deposition transcript.
> MR. SALLEY: I understand what you prefer not to have and don't want. I have my own choices.
> MR. RHINE: Okay. And I'm just asking you to abide by the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Louisiana, which you're repeatedly flouting.
> MR. SALLEY: That's your opinion. Take it up with the judge.

Ex. 2, pp 37:18 - 38:13.

However, Salley believed that undersigned counsel did not deserve the professionalism required of attorneys:

MR. RHINE:  Fred, stop interrupting.
MR. SALLEY: The same document is hearsay.
MR. RHINE: Fred, stop interrupting.  Can you please stop interrupting and just let me get a question out?
MR. SALLEY:  I might.
MR. RHINE: Do you understand what professional standards you're held to as an attorney and under the Federal Rules?
MR. SALLEY: You don't deserve that under the circumstances here.

*Id.*, pp 228:25 - 229:17

Litigation is not a game, but rather is a search for the truth and an effort to obtain justice. *See Sims v. ANR*, 77 F.3d 846, 849 (5th Cir. 1996).   Salley's conduct goes far beyond zealous representation of his clients.   Salley deliberately, and systematically, inserted himself into the deposition in attempt to: (1) coach his witness how to testify, (2) interfere with counsel's ability to question the witness, and (3) insert inappropriate comments regarding undersigned counsel into the transcript.   Such acts violated the Federal Rules of Civil Procedure and the Louisiana Rules of Professional Conduct; accordingly, Salley should be sanctioned by this Court.

As a result of his deposition conduct, Richard respectfully requests Salley and his client be sanctioned and required to: (1) pay attorney's fees and costs associated with the deposition of REC Marine; (2) pay attorney's fees associated with the drafting and filing of this Motion; (3) Salley individually be sanctioned $1,000.00, payable immediately to counsel for Richard; and (4) Salley be required to attend in person an additional 25 hours of CLE specifically on the topics of ethics and/or professionalism.

## 2.    Sanctions for Failure to Prepare the Witness

The deposition transcript is replete with Salley's attempts to excuse improper conduct by vaguely claiming the Federal Rules of Civil Procedure did (or did not) require various things.  This

was regularly done when discussing the failure of REC Marine to fully prepare its witness to testify regarding the topics that were noticed for deposition. REC Marine's witness indicated he was the corporate representative who was designated to testify regarding all of the topics in the deposition. Despite this, REC Marine failed to insure that his testimony would reflect all of the information that was known by REC Marine. As the Court is well aware, this violated Federal Rule of Civil Procedure 30(b)(6) which requires that after an organization's deposition has been noticed, "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.*

The purpose of Rule 30(b)(6) is to prevent the type of gamesmanship that has occurred here. As noted by one Court when analyzing the operation of Rule 30(b)(6):

> Foremost among those purposes, according to the Advisory Committee notes, is to curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it.

*Rainey v. American Forest and Paper Ass'n, Inc.*, 26 F. Supp.2d 82, 95 (D.C. 1998). The Court continued, explaining the "rule aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." *Id.* Likewise, the court in *United States v. Taylor* said it would be unfair to allow the "sandbagging" of an opponent by allowing an organization to conduct "a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *United States. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996). In *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, the court squarely addressed the consequences of failing to provide information when responding to a 30(b)(6) deposition notice:

> Because the discovery deadline has expired, because QBE did not fulfill its obligation to properly prepare its own designee, because QBE waited until the

corporate representative deposition began to give notice of its designee's partial inadequacy and because its designee could have (but did not) review substantially more material in order to be a more-responsive witness, Defendant's requested sanction will be imposed. Specifically, **QBE will be precluded from offering any testimony at trial on the subjects which its designee was unable or unwilling to testify about at the 30(b)(6) deposition**.

*QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 681 (S.D. Fla. 2012). The Court continued: "It would be patently unfair to permit QBE to avoid providing a corporate deposition designee on certain topics (because its insured refuses to cooperate) yet allow it to take a position at trial on those very same issues by introducing testimony which Defendant Jorda was unable to learn about during a pre-trial 30(b)(6) deposition." *Id.* The same sanction should result in this proceeding.

As a result of REC Marine's failure to prepare its witness to testify, Richard respectfully requests that REC Marine cannot alter its testimony without establishing that the information was not available at the time of deposition. For all areas of inquiry during the deposition to which its corporate representative was unable to testify, REC Marine should be unable to provide any testimony at trial to contradict the answers that are already in the record. It would be patently unfair to Richard for this gamesmanship to be upheld. All of this information was previously available to REC Marine, it simply decided to ignore it.

### 3. Sanctions for Discovery Abuses

Under Rule 37, a court may sanction a party on motion, if that party fails to timely supplement or correct a response to discovery that is incomplete or incorrect. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26(e). To that end, the court may award reasonable attorney's fees and costs, caused by the party's failure to respond or supplement. Fed. R. Civ. P. 37(c)(1)(A). Rule 37 of the

Federal Rules of Civil Procedure authorizes courts to appropriately respond to and deal with parties which have disobeyed discovery orders. *Chilcutt v. U.S.*, 4 F.3d 1313, 1319-1320 (5th Cir. 1993). A "court's discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited." *Id.*

The Fifth Circuit has noted that sanctions under Rule 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970); *see also*, *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (reasoning that "sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant."). While "the Federal Rules do not explicitly provide an avenue to sanction attorneys who fail to comply with discovery orders . . . . there is no doubt" that a Court may exercise its inherent powers to sanction discovery abuses and to discipline attorneys who engage in obstructive behavior. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993).

The deposition testimony of REC Marine indicates its counsel never sent discovery to his client. Instead, counsel attempted to answer Interrogatories himself, in violation of Federal Rule of Civil Procedure 33(b)(1). As a result of this discovery-related conduct, Richard respectfully requests Salley and his client be sanctioned and: (1) REC Marine shall be required to fully respond to Richard's Interrogatories within 5 business days; (2) the objections to said interrogatories be deemed waived; (3) Salley individually be sanctioned $1,000.00, payable immediately to counsel for Richard; and (4) Salley be required to attend in person an additional 10 hours of CLE specifically on the topic of discovery procedure.

### 4.     Sanctions for Duty of Candor

The Court has a right to expect that parties appearing before it will act with integrity, rectitude, and candor and will deal fairly with the Court. *In re Bank of Louisiana/Kenwin Shops, Inc.*, 1998 U.S. Dist. LEXIS 11680 at *11 (E.D. La. July 27, 1998). Courts possess the inherent power to levy sanctions in response to abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488, (1980); *Scaife v. Associated Air Center, Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) (federal courts have inherent posers including authority to sanction a party when necessary to achieve orderly and expeditious disposition of their dockets). These powers have been recognized as required to address acts which degrade the judicial system. *Nasco, Inc. v. Calcasieu Television and Radio*, 124 F.R.D. 120, 139 (W.D.La. 1989). Indeed, "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991).

The testimony of REC Marine calls into question Salley's candor to the Court. The testimony directly conflicts with affirmative representations made by Salley in a filing with the Court. As a result of this improper conduct, Richard respectfully requests Salley and his client be sanctioned and required to: (1) attend a show cause hearing related to representations regarding the affidavit; and (2) be sanctioned in a manner deemed appropriate by the Court.

### III.  CONCLUSION

REC Marine has previously disobeyed two Orders of the Court regarding discovery. The conduct of its counsel during the deposition was far beyond zealous representation of a client. Salley deliberately inserted himself into the deposition via voluminous objections, speaking objections,

questioning the witness while he was on cross, and coaching the witness in how to respond. Such conduct should not be rewarded. REC Marine failed to adequately prepare its witness for deposition to insure he had all of the information available to the company. The deposition testimony that was obtained indicates that Salley never sent discovery to his client and made misrepresentations to the Court regarding an unsigned affidavit. Any of the above conduct warrants sanctions implemented by this Court. Collectively –and given his conduct throughout this litigation– the actions are representative of an attorney who believes the rules do not apply to him. This Court should send a strong message –not just to deter Salley's future conduct– but to deter other members of the bar from believing they can get away with similar conduct with no repercussions.

Respectfully submitted,

*/s/ Eric J. Rhine*
Eric J. Rhine (*admitted PHV)*
Texas Bar No. 24060485
erhine@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:    713-653-5600
Facsimile:     713-653-5656

KOCH & SCHMIDT, LLC
R. Joshua Koch, Jr. (Bar Roll No. 7767)
650 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
Telephone: (504) 208-9040
Facsimile: (504) 208-9041

ATTORNEYS FOR RICHARD

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing was automatically accomplished on all counsel of record through CM/ECF Notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure on this 13th day of January, 2020.

*/s/ Eric J. Rhine*
Eric J. Rhine