UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| REC MARINE LOGISTICS, LLC | § | C.A. NO. 2:19-cv-11149-LMA-DMD |
| | § | |
| V. | § | |
| | § | |
| DEQUINCY R. RICHARD | § | SEC. "I"      MAG. (3) |
| | § | |
| V. | § | |
| | § | |
| REC MARINE LOGISTICS, LLC, | § | |
| GULF OFFSHORE LOGISTICS LLC and | § | |
| OFFSHORE TRANSPORT SERVICES, LLC | § | |

## **PROPOSED PRETRIAL ORDER**

1.   **Date of Pre-Trial Conference**

     February 11, 2020, at 10:30 a.m.


2.   **Appearance of Counsel and Parties represented**

     **For Plaintiff / Counter Defendant REC Marine Logistics, LLC,
     and Third-Party Defendants Gulf Offshore Logistics LLC and
     Offshore Transport Services, LLC**

     Fred E. Salley, T.A. (11665)
     Salley & Associates
     P.O. Box 3549
     77378 Hwy 1081 Cretien Annex
     Covington, Louisiana 70434
     Telephone:    985.867.8830
     Facsimile:    985.867.3368
     Email:        fsalley@charter.net

**For Defendant / Counter Plaintiff / Third Party Plaintiff DeQuincy Richard:**

Eric J. Rhine (*pro hac vice*, Texas Bar No. 24060485)
Spagnoletti Law Firm
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone      713.653.5600
Facsimile      713.653.5656
Email          erhine@spaglaw.com

R. Joshua Koch, Jr. (Bar Roll NO. 7767)
Koch & Schmidt, LLC
650 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
Telephone      504.208.9040
Facsimile      504.208.9041
Email          jkoch@kochschmidt.com

3.     **Description of the Parties**

      A.     **REC Marine Logistics, LLC, Gulf Offshore Logistics LLC,
and Offshore Transport Services, LLC**

Gulf Offshore Logistics, LLC is a vessel owner; Offshore Transport Services, LLC is a vessel owner of a different vessel, and REC Marine Logistics, LLC is a contract vessel operator by time/hour. REC was also the initiator of this litigation in this district by filing a Declaratory Judgment as employer of Richard.

Gulf Offshore Logistics, LLC was named in this suit, but has nothing to do with the plaintiff, or any vessel involved in this suit. Likewise, Offshore Transport Services, LLC, was the naked owner of the vessel in this litigation, but this company does not navigate, manage, or handle operations of its vessel which was contracted to and bare boat chartered to another company, which for specific time, was W&T Offshore, which managed, navigated, and operated the vessel, but has not been named as a party.

Richard has no valid claims for vessel liability (seaworthiness) as plaintiff failed to file and/or perfect any in rem claim against the vessel, or a party responsible for the vessel's seaworthiness, and there has been no in rem seizure of the vessel. One or the other of these perfected claims is essential for this remedy to be available.

**B.  DeQuincy Richard**

DeQuincy Richard ("Richard"), Defendant in this Declaratory Judgment action brought by REC Marine Logistics, LLC, and Counter-Plaintiff as to his claims against REC Marine Logistics, LLC, and Third-Party Plaintiff as to his claims against Gulf Offshore Logistics LLC ("GOL") and Offshore Transport Services, LLC. ("OTS"). Richard is a resident of Lafourche Parish. At the time of his incident, he was working for REC Marine, and brings his claims herein against REC Marine, as well as the owners and operators of the *Dustin Danos* (the "Vessel") for injuries he sustained while working on the vessel.

**4.  Jurisdiction**

This Honorable Court has admiralty jurisdiction pursuant to 28 U.S.C.A. § 1333.

**5.  Pending Motions**

Richard's Motion for Attorney's Fees (Rec. Doc. 50) and Richard's Motion for Sanctions (Rec. Doc. 58). For discussion at the pre-trial conference, in advance of Richard filing a motion related to same, Richard will raise REC Marine's continued refusal to provide full discovery responses in violation of the Court's Order & Reasons (Rec. Doc. 61).

REC Marine states "Defendants will timely appeal the Court's sanctions and its underlying reasoning, as it is contrary to the law and the facts of this litigation."

6.    **Brief Summary of Material Facts claimed  by:**

A.    **REC Marine / GOL / OTS:**

REC Marine Logistics, LLC. initiated this suit as a Declaratory Judgment in the Eastern district, but Richard joined the suit and converted it to a suit for damages under the Jones Act among claims.  All parties thereafter re-aligned into their current position.

Now:   Gulf Offshore Logistics, LLC, asserts that it was erroneously sued by Plaintiff's counsel in this venue and in Southern District of Texas, and has absolutely no legitimate function or exposure in this litigation and should be immediately dismissed with court costs. Offshore Transport Services, LLC was the naked owner of the vessel *Dustin Danos*, but since the vessel was fully chartered to W&T Offshore for all relevant times in question, and W&T Offshore was wholly responsible for operation, management, crewing and navigation of the vessel, this defendant was not legally responsible for these obligations, and should not be a party in this litigation.  Richard was not owed a warranty of seaworthiness by this party.

REC Marine Logistics, LLC was a contract operator of the *Dustin Danos* for time and hours.  It was not responsible for the voyages or for seaworthiness, but it did hire persons to work as crew.  Richard was a newly hired crewman who contended he was trained, competent, and physically fit.

Richard was brought aboard and was placed on watch for less than 6-8 hrs.  While attempting to connect a mooring line from the vessel to the adjacent platform, he demonstrated

he had no training or ability to do basic seaman work although when seeking the work he claimed he had prior deckhand experience.  The second captain tried to show him how to connect the line, but after Richard utterly  failed to do so, the second captain made the connection with him watching for training.  They started down the jump deck serving the stern work deck, and while doing so, Richard was observed by the captain and second captain, to fake a fall onto the stern deck from which he jumped up and alleged he had disjointed his right shoulder.  Any injury to Richard or to his right shoulder and/or other body parts pre-existed this employment;, Richard was searching for a location at which he could fake or stage an injury, and this is where it occurred.

Richard also claimed previous marine injuries of the same type and nature as those "injuries" claimed here, which he hid from REC while seeking initial employment.  He is prevented from attempting to make claim for similar accidents and injuries under the expanded rule of *McCorpen*.  *McCorpen,* as expanded by recent cases, prevents plaintiff from making any identical and/or similar claims of injury or re-injury which were not fully disclosed to a prospective new employer such as REC.

B.      **Richard**

On November 6, 2018, and at all material times hereto, Richard was employed by REC Marine as deckhand.  OTS owned the *Dustin Danos*, the vessel on which Plaintiff was working at the time of injury made the basis of suit.  REC Marine and GOL owned and/or crewed the Vessel.  On the day of the incident, Richard was helping the captain tie-down the vessel at a platform in the Gulf of Mexico.  As he descended a set of defective metal stairs on the back of

5

the vessel, the grating that comprised one of the steps shifted.  As a result, Richard was thrown to the deck of the vessel, losing consciousness on impact, and sustaining injuries to his head, neck, back and right shoulder.  Nothing Plaintiff did or did not do contributed to his injuries.

Maritime workers should be able to be safe as they go about their duties on a vessel, and this requires nonslippery decks and stairs. Decks and stairs therefore should be made of non-slip flooring or covered with nonskid materials. These must be inspected and maintained to remain effective. Maintenance includes reapplication or replacement when the coefficient of friction is inadequate, and it also requires prompt cleanup of spills and debris. Maritime standards also require steps to be safely secured so they do not shift in the manner described by Richard. Maritime employees should be able to expect to be safe while working on vessels and walking on relatively high-traffic, properly maintained stairways that comport with widely accepted safety standards. REC Marine, GOL and OTS should have allocated the resources, including sufficient training and manpower, to eliminate this unnecessary hazard by ensuring that stairways and walkways were inspected and maintained in compliance with recognized safety principles.

There is no valid evidence before the Court of prior injuries sustained by Richard.  Were that to be the case, any *McCorpen*-related defense would solely relate to REC Marine's obligation to pay maintenance and cure benefits to Richard.  Richard passed the pre-employment physical required by REC Marine, and the testimony of REC Marine's corporate representative confirms Richard was fit and physically capable of performing his duties on the date of the incident.

Following the injury, Richard has suffered substantial pain in his back, neck, right shoulder, and head. He has undergone significant medical treatment following.  An MRI of the

shoulder confirms a torn labrum and partially torn rotator cuff. Richard requires surgery to repair the tears. Richard has treated his neck injuries conservatively. Neurologic findings on an EMG correspond with the clinical complaints. Dr. Shamsnia has diagnosed post concussion syndrome, post-concussion headache, neck pain, cervical radiculopathy, and memory difficulties. The results of both an MRI of the Brain and of Diffusion Tensor Imaging of the Brain correlate with Richard's symptoms. His future medical treatment due to his brain injuries will be substantial in cost and duration. Based on the current recommendations for treatment, Richard's future medical care will range between: $1,761,289.55 to $2,032,731.87

Richard's past and future lost wages are calculated at $1,224,128.00.

7.    **Uncontested Material Facts**

(a)    Dequincy Richard was born in July 1987 and resides in Thibodaux, LA. He dropped out of high school in the 11th grade and holds a GED.

(b)    On or about the date of incident, REC Marine was the Jones Act employer of Richard.

(c)    On or about the date of incident, REC Marine received notice that Richard claimed to have sustained injuries while working on the *Dustin Danos.*

(d)    The incident made the basis of this suit was reported.


8.    **Contested Issues of Fact**

REC Marine / GOL / OTS requested facts (a) through (w) listed below be moved from "Uncontested Issues of Fact" to "Contested Issues of Fact". Richard disagrees, as facts (a) through (w) have been deemed admitted by the failure of each REC Marine, GOL and OTS to

timely admit or deny Richard's First Request for Admission propounded to each, via hand

delivery, on October 4, 2019[1].

(a)     On November 6, 2018, Richard was an employee of REC Marine, working in service of the *Dustin Danos*.

(b)     On November 6, 2018, the *Dustin Danos* was owned by OTS.

(c)     On November 6, 2018, the *Dustin Danos* was operated by REC Marine and GOL.

(d)     On or about the date of incident, Richard sustained injuries while in the course and scope of his employment aboard the *Dustin Danos.*

(e)     Prior to Richard's reported injury, his conduct and ability rating aboard the *Dustin Danos* was satisfactory.

(f)     REC Marine was negligent in causing the injuries sustained by Richard on the date in question.

(g)     OTS was negligent in causing the injuries sustained by Richard on the date in question.

(h)     GOL was negligent in causing the injuries sustained by Richard on the date in question.

(i)     Richard was not contributorily negligent at the time of his accident on the *Dustin Danos.*

(j)     Richard did not suffer from any relevant pre-existing condition(s) prior to the occurrence in question.

(k)     On the date in question Richard was under instructions to perform the work he was performing.

(l)     The *Dustin Danos* was unseaworthy at the time of incident herein.

---

[1] REC Marine / GOL / OTS had another opportunity to respond to the admissions on January 31, 2020, the date the Court ordered them to "comply with all outstanding discovery requests" (Rec. Doc. 61), yet they failed to do so. As a result, such requests have been deemed admitted.

(m)     The actions of REC Marine proximately caused the injuries sustained by Richard on the date in question based on the occurrence made the basis of this lawsuit.

(n)     The actions of GOL proximately caused the injuries sustained by Richard on the date in question based on the occurrence made the basis of this lawsuit.

(o)     The actions of OTS proximately caused the injuries sustained by Richard on the date in question based on the occurrence made the basis of this lawsuit.

(p)     REC Marine has denied adequate medical cure to Richard for the injuries sustained in the incident.

(q)     REC Marine has denied the payment of maintenance to Richard for the injuries sustained in the incident.

(r)     Richard was able-bodied and in good health when the accident that is the basis of this suit occurred.

(s)     REC Marine has no knowledge of any preexisting injury or condition that may have contributed to Richard's injuries.

(t)     Richard did not violate any written or oral instruction, rule, regulation, code, standard, understanding, practice, custom, or law related to the accident.

(u)     REC Marine did not conduct an investigation on board the *Dustin Danos* after Richard's accident.

(v)     GOL did not conduct an investigation on board the *Dustin Danos* after Richard's accident.

(w)     OTS did not conduct an investigation on board the *Dustin Danos* after Richard's accident.

(x)     Following the incident, Richard received initial medical treatment on the deck of the vessel.

(y)     Following the incident, Richard was taken to shore and received treatment at Occupational Medicine Service.  At OMS, Richard presented with complaints of right shoulder pain, neck pain, dizziness, joint pain, and muscle weakness.  The body map that completed by Richard notes injuries to his head, neck, right shoulder and lower back.

(z)     On December 3, 2018, Richard was seen by Dr. Uzoma Moore at LA Health Solutions. He presented with complaints of pain in his head, neck, and right shoulder. Symptoms associated with the head injury included: sleep disruption, headaches, nausea, vomiting, poor concentration, light sensitivity, forgetfulness, burred vision, and dizziness. Dr. Moore causally related the injuries and treatment to the accident on November 6, 2018.

(aa)    Richard has been diagnosed by Dr. Shamsnia with post concussion syndrome, post-concussion headache, neck pain, cervical radiculopathy, right shoulder pain, memory difficulties, and rib pain on right side.

(bb)    Dr. Douglas Bostick has causally related Richard's shoulder complaints to the fall off of the stairs accident.

(cc)    Richard underwent an EMG on July 2, 2019. The results were consistent with the complaints made by Richard regarding his cervical spine.

(dd)    Richard received an MRI of the brain and Diffusion Tensor Imaging with fiber tracking on October 23, 2019. The radiologist found there was a clinical correlation between these results and the symptoms that have been experienced by Richard.

(ee)    An MRI of the lumbar spine on October 23, 2019 showed disc herniations at L3-4, L4-5, and L5-S1.

(ff)    An MRI of Richard's right shoulder was taken on November 1, 2019, confirming tears of the labrum and rotator cuff.

(gg)    Dr. Bostick feels that Richard requires surgical intervention on his right shoulder.

(hh)    Dr. Marco Rodriguez has found that Richard's diagnoses relate to the accident that occurred on November 6, 2018.

(ii)    All of Richard's medical treatment and diagnostic testing were necessary for the proper care of any injuries sustained in the incident made the basis of this lawsuit.

(jj)    The amount charged for all of Richard's medical treatment was reasonable at the time and place that the services were provided.

(kk)    Richard has been totally incapacitated from performing the usual and ordinary tasks of his job as a deckhand.

(ll)    Richard's incapacity is permanent.

(mm)   Richard has lost wages as a result of his inability to return to work due to the injuries he sustained on the *Dustin Danos*.

(nn)   Richard has suffered physical pain and mental anguish in the past as a result of his injuries he sustained on the *Dustin Danos*.

(oo)   In all probability, Richard will suffer physical pain and mental anguish in the future as a result of his injuries he sustained on the *Dustin Danos*.

(pp)   Richard has suffered physical impairment in the past as a result of the injuries he sustained on the *Dustin Danos*.

(qq)   In all probability, Richard will suffer physical impairment in the future as a result of the injuries he sustained on the *Dustin Danos*.

(rr)   Richard has suffered loss of enjoyment of life in the past as a result of the injuries he sustained on the *Dustin Danos*.

(ss)   In all probability, Richard will suffer loss of enjoyment of life in the future as a result of the injuries he sustained on the *Dustin Danos*.

(tt)   Dr. Randolph Rice calculates Richard's loss of income at a present-day value of $1,224,128.00.

(uu)   Richard's future medical costs range between: $1,761,289.55 to $2,032,731.87.


Defendants deny Plaintiff's assertion that Defendants did not respond to, and deny, Plaintiff's Admissions since all were answered, and served on Plaintiff in timely fashion. Moreover, there was no hand delivery of any pleadings in this case by Plaintiff to any Defendant. The requests from Plaintiff were delivered by email to defendants, and were answered, timely, by email delivery.  Plaintiff's assertion in this case is simply wrong, and in bad faith.

Moreover, Defendants claim that the asserted issues intentionally inserted by Plaintiff, are wholesale untruths, fabrications, and fictions, all disputed by Defendants; and Defendants will move that they be completely removed from the order which will make the trial more

manageable. Plaintiff has attempted to control the pre-trial order and its contents by denying

access to Defendants, and simply continues to move inaccurate material to another location or

section.[2]

9.      **Contested Issues of Law:**

Richard states there are no contested issues of law since facts (a) through (w) in Section 8

above have been deemed admitted by the failure of each REC Marine, GOL and OTS to timely

admit or deny Richard's First Request for Admission propounded to each; however, out of an

abundance of caution, the contested issues are listed below:

(a)     Whether REC Marine was negligent.

(b)     Whether OTS was negligent.

(c)     Whether GOL was negligent.

(d)     Whether the negligence of REC Marine, OTS and/or GOL was the cause-in-fact of Richard's injuries.

(e)     To the extent applicable, whether an unseaworthy condition existed on the *Dustin Danos*.

(f)     To the extent applicable, whether any unseaworthy condition constituted a substantial factor in causing Richard's accident and injuries.

(g)     Whether the owner of the vessel is responsible for the unseaworthy condition on the vessel.

(h)     Any issue of law inherent to the facts presented herein.

---

[2] Richard states "Defendants'"comments are both improper within this section of the Pretrial Order, and also categorically false. The comments represent wholesale untruths without any basis in fact. Richard will address all of the inaccuracies contained within them, should the Court request, during the pretrial conference.

Defendants demand that Plaintiff's continued claim for a warranty of seaworthiness must be removed from the issues of law (see proposed issues inserted by Plaintiff: e), and f). Defendant has already explicitly stated in prior sections of this document that Plaintiff failed to correctly set up any claim for a warranty of seaworthiness, as Plaintiff did not seize the vessel *in rem*; and/or did not file suit against the contract bare boat charterer of the vessel from its bare owner, Offshore Transport Services, LLC. [3]

10.    **Exhibit Lists**

A.      **REC Marine, OTS, GOL (without objection)**

c)      Accident report created on vessel for Richard event.
d)      Log of vessel for 5-6 November 2018

        **REC Marine, OTS, GOL (with objection)**

a)      Medical records and reports utilized by Dr. Bret Casey including his records or materials

        Objection: Hearsay, Relevance, Exhibit never produced in discovery, Exhibit not included on any Exhibit List filed with the Court

b)      Richard Employee file of REC containing the pre-employment records accumulated on Richard; and separately, employee file maintained by REC post-hire of Richard.

e)      Medical records maintained and produced by Brittany Bourgeois, P.T.

---

[3] Richard states "Defendants'"comments are both improper within this section of the Pretrial Order, and also categorically false. The comments represent wholesale untruths without any basis in fact. Richard will address all of the inaccuracies contained within them, should the Court request, during the pretrial conference.

f) Defendants may utilize any documents, exhibits, and records listed and/or offered by any other party

Objection: Exhibits never produced in discovery, Exhibits not included on any Exhibit List filed with the Court

B.    **Richard (without objection):**

| EX | DESCRIPTION |
|----|-------------|
| 1 | GOL Personal Incident/Illness Report |
| 6 | Richard's personnel file from REC Marine |
| 7 | Richard's wage and benefits records from REC Marine |
| 8 | Richard's Pay Stubs from REC Marine |

**Richard (with objection):**

| EX | DESCRIPTION | OBJECTION | RESPONSE |
|----|-------------|-----------|----------|
| 2 | Photographs of Vessel / Inspection taken by Robert Borison | have not been seen so I object to them | these are due, along with Borison's report, on February 12, 2020. |
| 3 | Videos of Vessel Inspection performed by Robert Borison | have not been seen so I object to them | these are due, along with Borison's report, on February 12, 2020. |
| 4 | Documents relied upon by Robert Borison | have not been seen so I object to them | these are due, along with Borison's report, on February 12, 2020. |
| 5 | Gulf Offshore Logistics Daily Boat Logs for the *Dustin Danos* | Objection | Improper, incomplete objection |

14

| | | | |
|---|---|---|---|
| 9 | Richard's Certification and Safety documents | currently objected to, not having been seen | see Richard's disclosures of 02/07/20 |
| 10 | Richard's Photographs (Richard_000113-116) | currently objected to, not having been seen | see Richard's disclosures of 02/07/20 |
| 11 | Sam McCain Deposition Exhibit Nos. 1-11 | currently objected to, not having been seen | see the deposition exhibits |
| 12 | REC Marine (Blaine Russell) Deposition Exhibit Nos. 1-11 | currently objected to, not having been seen | see the deposition exhibits |
| 13 | CV Randolph Rice, Ph.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's Expert Disclosures of 11/13/19 |
| 14 | CV Aaron M. Wolfson, Ph.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's Expert Disclosures of 11/13/19 |

| 15 | CV Robert E. Borison | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's Expert Disclosures of 11/13/19 |
|---|---|---|---|
| 16 | CV Marco A. Rodriguez, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's disclosures of 02/07/20 |
| 17 | CV Robert Douglas Bostick III, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's disclosures of 02/07/20 |

| 18 | CV Morteza Shamsnia, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's disclosures of 02/07/20 |
|---|---|---|---|
| 19 | Business Records LA Health Solutions / Marco A. Rodriguez, M.D., Robert Douglas Bostick III, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
| 20 | Billing Records LA Health Solutions / Marco A. Rodriguez, M.D., Robert Douglas Bostick III, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |

| 21 | Business Records Shamsnia Neurology / Morteza Shamsnia, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
|----|---|---|---|
| 22 | Billing Records Shamsnia Neurology LLC / Morteza Shamsnia, M.D. | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
| 23 | Business Records HealthPRO Physical Therapy | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |

| | | | |
|---|---|---|---|
| 24 | Billing Records HealthPRO Physical Therapy | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
| 25 | Business Records Riverbend Imaging Center | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
| 26 | Billing Records Riverbend Imaging Center | have not been seen nor have they been connected to Richard's claim. I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |

| 27 | Business Records West Jefferson MRI | have not been seen nor have they been connected to Richard's claim.  I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
|----|------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------------------------------------------------------------------------------------------|
| 28 | Billing Records West Jefferson MRI | have not been seen nor have they been connected to Richard's claim.  I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |
| 29 | Billing Records Lloyd's Remedies | have not been seen nor have they been connected to Richard's claim.  I provisionally object to them, and suggest they be listed as other than *fait accompli* | see Richard's prior production of medical records (1-112, 117-560), as well as disclosures of 02/07/20 |

11.    **List of Deposition Testimony**

    1.     Captain Sam McCain
    2.     Blaine Russell as the corporate representative(s) of REC Marine Logistics

           To the extent either witness is not brought to trial for examination, their deposition testimony will be introduced.

12.    a.  **List and brief description of any charts, graphs, models, schematic diagrams, and similar objects which, although not to be offered in evidence, respective counsel intend to use in opening statement or closing arguments**

The parties do not have any demonstrative exhibits to use at trial.

b. **Either a stipulation that the parties have no objection to the use of the listed objects for such purpose, or a statement of the objections to their use.**

If such objects are to be used by any party, they will be submitted to opposing counsel at

least three days prior to trial and, if there is then opposition to their use, the dispute will be

submitted to the Court at least one day prior to trial.

13.    **Witness Lists**

A.     **REC Marine, OTS, GOL:**

     <u>**Will Call**</u>:

     Richard under cross-exam on all issues of the case.

     <u>**May Call**</u>:

a)     Brian Harris, Claims Management, REC Marine Logistics, LLC,  4535 Hwy 308 RACELAND, LA 70394, will testify about Richard's employment application, his pre-employment records, and records he provided to the pre-employment examiner during pre-employment ; together with Richards lack of co-operation with REC when he reported he had an accident, and wanted treatment for what appeared as pre-existing injuries not disclosed to the pre-employment examinar, or to REC;

b)   Blaine Russel, Manager of REC Marine Management, LLC, P.O. Box 309, Raceland, LA 70394, will testify about all matters concerning contracts and employment by REC, and will testify that its operation of the Dustin Danos was for monthly invoiced time and hours, and that it was not a charterer of the vessel which was operated, managed and controlled at the time of Richard's claim by W & T Offshore, who was never added as an identified interested party to this litigation

c)   Casey Curole, Raceland, La. GOL, LLC. Port Captain, contracted to serve as Port Captain for various vessel including the Dustin Danos at the time of the claimed accident to Richard. He will testify that the equipment and gear on the vessel was maintained in good shape and was in sound condition. He will confirm that the jump decks on the stern deck were in good condition in November 2018, and did not need repair, adjustment or replacement. He will discuss deployment of the vessel by W&T Offshore during that service.

d)   Sam McCain, Morgan City, La. employer of REC Marine Logistics, LLC, second Captain of M/V Dustin Dano will testify about his service for REC, and his eye-witness of the event claimed by Richard.

e)   Capt Oliver Prince, 20636 Hwy 1, Golden Meadow, La. 70357, employee of REC Marine Logistics, LLC, will testify of his service on the Dustin Danos, about the vessel, and about his dealings with Richard before, at, and after his alleged accident which appeared to be carefully planned and staged by Richard. He will testify to his personal observations and witness to events concerning Richard on the date of the claimed accident;

f)   Dr Bret Casey, Gulf Coast Orthopaedics, 1001 School Street, Houma, La to testify as an Orthopaedic Expert concerning medical claims of, medical history of, and care to Richard involving medical condition/disability of Richard from 2007 through present;

g)   Karlie Rodgers or other Representative of Occupational Medical Services, 144 Valhi Lagoon Crossing, Houma, LA 70360 concerning Pre-employment Medical Records and Review/Exams/results on various dates from 2007 through date of trial;

h)   Representative of any pre-employment medical service performing pre-employment assessment of Richard for the REC Marine application for employment, or prior;

i)   Representative of Aries Marine, Youngsville, La., employment records of one of Richard's prior employers already provided in discovery;

j)  Representative of OPC Marine, Houma, La. identifying records of this prior employer, which have already been produced/provided to all parties;

k)  Representative of Turner Industries, Baton Rouge, La. a prior employer of plaintiff, Richard, whose records have been provided to all parties in discovery;

l)  Representative and records of additional employers found by testimony from past employers at trial

m)  Occupational Medical Services, 144 Valhi Lagoon Crossing Houma, LA 70360 Pre-employment Medical Review/Exams; Pre and Post accident exams, previously provided to all parties;

n)  Drew Aucoin, 4782 Arthur Dr. New Orleans, LA 70127 with facts, vessel operation, procedure, equipment location, operability, accident reporting, communications and observations of Richard;

o)  Brittany Bourgeois, Health Pro Physical Therapy, 501 Barrow Str., Houma, La. 70730 to testify, and list as a non expert, the physical therapy services she provided, why, and the physical findings or instructions on which they were based.

p)  Any witness listed, called or sought to be called by any other party.


**B.      Richard**

        **Will Call**

1.      DeQuincy Richard
        c/o Spagnoletti Law Firm

                Regarding the facts and circumstances surrounding the incident, injuries and damages, maintenance and cure

2.    Blaine Russell or other corporate representative(s) of
      REC Marine Logistics
      Gulf Offshore Logistics
      Offshore Transport Services
      c/o Salley & Associates

          Regarding the facts and circumstances surrounding the incident,
          operations, procedures, safety, facts and liability, maintenance of the
          vessel and her appurtenances, maintenance and cure

3.    Captain Sam McCain
      c/o Salley & Associates

          Regarding the facts and circumstances surrounding the incident,
          operations, procedures, safety, facts and liability, maintenance of the
          vessel and her appurtenances

4.    Robert E. Borison
      Total Safety Services, Inc.
      215 E. Second St. Unit 1
      Pass Christian, MS 39571
      504.415.0945

          Mr. Borison is a liability expert who performed an accident investigation
          analysis of the incident giving rise to the Richard's injury, and will offer
          his opinion on the liability of the vessel owners and operators in
          connection with same.

5.    G. Randolph Rice, Ph.D.
      7048 Moniteau Court
      Baton Rouge, LA 70809
      225.927.4546

          Dr. Rice is an expert economist who will testify regarding Richard's
          economic losses, including, but not limited to, past wage loss, future loss of
          earning capacity, loss of benefits and household services.

6.      Aaron M. Wolfson, Ph.D.
        Stokes & Associates
        3501 N. Causeway Boulevard, Suite 900
        Metairie, LA 70002
        504.608.6943

        Dr. Wolfson is an expert vocational rehabilitation counselor and life care planner who will testify regarding his vocational assessment as to the employability and expected earnings range of Richard, and his evaluation of Richard as a result of the injuries he received in the incident made the basis of this suit and his projected medical cost analysis for Richard's future medical needs and costs.

7.      Marco A. Rodriguez, M.D.
8.      Robert Douglas Bostick III, M.D.
        LA Health Solutions
        3001 Division St., Suite 100
        Metairie, LA 70002
        504.620.5520

9.      Morteza Shamsnia, M.D.
        Shamsnia Neurology
        2909 Kingman Street
        Metairie, LA 70006
        504.717.2233

        The above are Richard's treating physicians, who will be called to testify as to the histories taken; the results of examinations of Richard; the results of diagnostic testing conducted in order to diagnose the medical conditions requiring treatment; the diagnoses of Richard's injuries; the cause of the injuries; an explanation of the treatment provided, including any surgical and/or invasive procedures; Richard's prognosis, including any anticipated permanent physical limitations he might suffer; the necessity for the medical treatment provided; the medical treatment required in the future, including the estimated cost such treatment; and the reasonableness of the medical expenses incurred.

**May Call**

10. Chris Holcombe
11. David Gilbert
    c/o Salley & Associates

       Crewmembers on the vessel on the date of the incident, regarding the facts and circumstances surrounding the incident, operations, procedures, safety, facts and liability, maintenance of the vessel and her appurtenances

12. Custodian of Records (business and costs) for:
    LA Health Solutions / Marco A. Rodriguez, M.D., Robert Douglas Bostick III, M.D.; Shamsnia Neurology / Morteza Shamsnia, M.D.; HealthPRO Physical Therapy; Riverbend Imaging Center; West Jefferson MRI; Lloyd's Remedies

       The above custodians may testify regarding the authenticity of the records kept under their custody, and that the records meet the business records exception to the hearsay rule.

Richard's Witness List was filed in accordance with prior Court Orders. REC/OTS/GOL did not file a witness list in accordance with prior Court Orders; therefore Richard objects to their witnesses listed herein.

Counsel for Richard certifies that expert reports have been furnished in accordance with the Federal Rules of Civil Procedure and prior Court Orders, and that the liability report will be furnished in accordance with the Court's Order. REC/OTS/GOL did not furnish expert reports or designate any expert witness; therefore Richard objects to any expert witness or evidence that requires expert testimony.

Counsel for Defendants does not control, and declines to produce or be responsible for any witnesses at trial. Any witnesses must be arranged for by agreement with the witness, or subpoenaed.

14.     **Jury / Non Jury Trial**

This matter is presently set for trial by jury on all aspects of the case.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

15.     **Damages**

The issue of liability will not be tried separately from that of quantum.

16.     **Disposition**

The parties participated in a settlement conference before Magistrate Dana M. Douglas. Richard knows of no other matters that might expedite a disposition of this case, unless the Court orders the insurance carriers and parties to attend a settlement conference.

17.     **Trial**

Trial shall commence on March 9, 2020, at 8:30 a.m., and is expected to last three days.

18.     **Formulation of Pre-Trial Order**

This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared via email and telephone.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control

the course of trial and may not be amended except by consent of the parties and the Court, or by

order of the Court to prevent manifest injustice.


19.     **Settlement**

Possibility of settlement of this case was considered.


20.     **Signature of Counsel**


_/s/ Fred E. Salley_____
Fred E. Salley
Counsel for REC Marine Logistics, LLC,
Gulf Offshore Logistics LLC, and
Offshore Transport Services, LLC


_/s/ Eric J. Rhine_____
Eric J. Rhine
Counsel for DeQuincy Richard


New Orleans, Louisiana on this _____ day of February, 2020.


_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE