```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

REC Marine Logistics, LLC,         )    CIVIL ACTION
Plaintiff                          )
                                   )    NO.2:19-cv-11149-LMA-DMD
versus                             )
                                   )
DeQuincy R. Richard                )    JUDGE Africk
Defendant                          )    MAGISTRATE (3)
_____)
```

## MEMORANDUM OF LAW

In response to the Court's recent request for a memorandum covering Offshore Transport Services, LLC position, that on the date of the plaintiff's alleged accident, *i.e.,* 6th November 2018, there was no warranty of, nor breach of any warranty of seaworthiness of the **M/V Dustin Danos**, owed to plaintiff by bare owner, Offshore Transport Services, LLC, it is submitted that:

The vessel on the date in question, had been chartered by Offshore Transport Services, LLC and surrendered to W&T Offshore, who was in command and control of the movements and navigation of the vessel, and had sent it to work at one of its satellite platforms located in the Gulf of Mexico. **See** Affidavit of Todd Danos, attached hereto.

Prior to the reported incident, the steps where it was alleged Richard's incident had occurred, were checked by at least two of the REC Marine Logistics, LLC, supervisory personnel, who will testify that there were no defects, and no

loose steps, at the site where the incident allegedly occurred. The same step structure was inspected before and shortly after the incident, by the vessel's port captain specifically looking for any defects or looseness. No defect or looseness was detected whatever, and the steps remained in place without repair or adjustment, but frequent inspections, for another year after the incident.

At the time of the alleged incident, several witnesses inspected the steps and will deny that there were any problems, looseness or maladjustment.

The evidence which will be adduced from live witnesses at trial about the condition of the steps will be not only that the steps were tight, and in good shape, <u>at the time of the alleged incident</u>, but that at the <u>commencement</u> of the charter to W&T Offshore, the steps were tight, in good shape, and seaworthy.

There will be no evidence in the trial that the steps were in need of repair or adjustment, at either the commencement of the charter to W&T Offshore, or at the time of Richard's alleged incident.

Should there be any evidence at trial indicating that there were any problems with the steps at the time of the incident, that <u>might</u> be interpreted as evidence of un-seaworthiness, but the condition could not be attributed to, or charged against the bare owner, Offshore Transport Services, LLC, as actionable

unseaworthiness, as the vessel had been surrendered to the charterer, W&T Offshore, before the condition, if it existed, manifested.

This is the rule in all of the federal circuits, with the notable exception of the Fifth Circuit, because of Judge Rubin's decision in <u>Baker v. Raymond International, Inc</u>., 656 F.2d 173 (5th Cir. 1981). Counsel seeks to convince the Fifth Circuit to modify or reverse its opinion as not in keeping with the other federal admiralty circuits. This rule should be consistent in all of the federal circuits as the current interpretation, manifestly cripples admiralty operators in this circuit.

However, Counsel does not believe there will be evidence in this case to support charging a jury on a breach of the warranty of seaworthiness, but if that occurs, Counsel still has instructions to try and align the Fifth Circuit with the other Appellate Circuits, or to appeal the case if that becomes an issue at trial. Even Louisiana's own Fifth Circuit has rejected Rubin's opinion, in **<u>Baker.</u>**

### **<u>Arrest of the Vessel</u>**

Rule C of the Supplemental Rules of Admiralty (Rule 9 and h) provide the instructions for *in rem* seizure (arrest) of a U.S. vessel. The *in rem* seizure of the vessel provides the corpus necessary for the court to exercise the required

jurisdiction over the vessel; without which, there is no legal basis or means to exercise any court jurisdiction over the property. Physical control of the property (*in rem*) is the means to exercise control. To commence a vessel seizure, it requires a party's invocation of Admiralty in the United States District Courts (the Supplemental Admiralty jurisdiction of the U.S. Courts, Rule 9h), and the vessel must be arrested or seized, (or kept by an agreed keeper) by the U.S. Marshall upon receipt of the required pleadings, and deposit, to the Clerk of Court; the court approved seizure is then performed by and the vessel held, by the U.S. Marshall, or his proxy, pending the conclusion of the claim against the vessel, or thru other possible agreements or settlements resulting in the release of the vessel. Without seizure of the vessel, or the *res*, there is no valid *in rem* jurisdiction, and *in rem* court procedures fail for lack of any corpus.

## McCorpen Issue

REC has also raised an older maritime defense, now generally referred to as the McCorpen Doctrine, which has expanded in the last few decades, particularly in the Fifth Circuit

In a recent, similar, case, the Plaintiff (also a Jones Act Seaman) failed to disclose detailed fact/medical information sought by a prospective Jones Act employer, concerning his prior

employments and injuries. Judge Feldman made these comments about Giroir's honesty in **Giroir v. Cenac Marine Services**, *LLC*, CA#18-3595 "F" USDC EDLF:

> "But Giroir fails to point to any evidence that contradicts the affidavit of CMS's Personnel Manager.
>
> Giroir ignores case literature instructing that the materiality evidence present on this record supports CMS's submission that it is entitled to judgment as a matter of law on this issue. Indeed, the Fifth Circuit instructs that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 175 (5th Cir. 2005). Here, there is no dispute that, before CMS hired Giroir, it required that he answer questions about his physical fitness

Page 28

> for duty and that, in response, Giroir concealed his pre-existing back conditions and prior back surgeries. There is also no genuine dispute that the medical questionnaires were specifically designed to elicit information concerning pre-existing back problems and prior back surgeries, that such information was rationally related to the job applicant's physical ability to perform job duties, and that Giroir concealed his prior lower back conditions and surgeries; accordingly, such concealed information was material to CMS's decision to hire Giroir. See Thomas v. Hercules Offshore Services, L.L.C., 713 F. App'x 382, 387-88 (5th Cir. Mar. 2, 2018). The second prong of the McCorpen defense is satisfied here.
>
> *Causal Link*
>
> As to the third element, the record demonstrates that there was a causal link between the concealed pre-existing lower back condition - lumbar

stenosis - and the injury Giroir alleges he sustained to his low back while working for CMS. Giroir does not submit any evidence that calls into question this causal link between his prior back condition and the back injury he alleges he suffered while attempting to retrieve an oil pump from a shelf while working for CMS. "[T]here is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Brown, 410 F.3d at 175-76 (noting that "employers need to be certain that

each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees.").[8] Because there is a connection between the withheld information relative to a prior low back condition and the low back injury allegedly sustained in 2015, CMS has carried its burden to show a causal connection. Therefore, on this record, CMS has established a McCorpen defense as to Mr. Giroir's alleged back injury sustained in 2015."

**{U.S.D.C. CA#18-3595, pages 28-29}**

In the instant case, Richard intentionally tried to hide, and declined to disclose to REC, pre-existing, material medical history, prior injuries, and pre-existing structural deformities within a prior medical history that he knew or should have known, that REC was seeking in order to determine Richard's personal suitability and health for the job he had applied for with REC.

In this case, one could only surmise that Richard was intentionally hiding his existing medical disabilities, and/or was quietly creating, a fabricated event; which he could later

attempt to structure for his own needs. After spending less than a day on the vessel, Richard was witnessed to fake a fall down the stern jumpsteps, which the eye witnesses viewed as having been staged. Richard complained of the same upper body bone and joint injuries that he already had before he arrived. These were the exact same injuries that he denied having, in his pre-employment application, and pre-employment physical exam performed for REC. Richard had declined to disclose to REC, or its pre-employment examining medical staff, either his prior shoulder dislocation or his thoracic spine problems. See the **McCorpen** Defense.

Intentional or other failure of a seaman employment applicant to honestly, completely, and fully disclose his prior injuries and disabilities during an application or medical examination for employment, in which the potential employer is searching for possibly disqualified applicants who have had certain high risk accidents, injuries, weaknesses or disabilities; it is manifest that because of the increased probability of repetition of, or reduced job ability or injuries to the applicant, or to other persons, validly justify the prospective employer to reject applicants, or remove such applicants, from their specific job search. The discovery of the existence of fraudulent or improper representations of

physical status, made during an application or an exam, may result in a claimant's loss of any and all benefits, including maintenance and cure, at a subsequent trial. It may also validly justify removal of some persons from improperly obtained employments; or result in some litigation losses in which there has been a showing that a litigant is re-alleging prior injuries sustained at a different time and place, as here; or declined to disclose to his employer, prior injuries or illnesses which relate to his physical fitness to perform the job he is seeking. See, **McCorpen Doctrine**, (*viz* **McCorpen v. Central Gulf Steamship Corp.,** 396 F.2d 547, 548 (5th Cir. 1968), and **Brown v. Parker Drilling Offshore, Corp**, 410 F.3rd 166 (5th Cir., 2005). See also, **Kevin LaBlanc v. La Carriers,** CA#15-1657 SECTION: "G"(1), Judge Brown; **LeBlanc v. La Carriers, LLC** (E.D. La., 2016); **Johnson v. Cenac Towing, Inc.**, 468 F.Supp.2d 815 (E.D. La.,2006) and **McMillan v. Tug Jane A. Bouchard**, 885 F.Supp. 452 (E.D. N.Y.,1995).

## **CONCLUSION**

Accordingly, REC's defenses should be granted by this Court, and all Richard's claims should be dismissed. Not only has Richard attempted to stage and fabricate an accident and injury which did not occur, but claims vast sums of medical care from an innocent party.

Richard is attempting to replicate old injuries and illnesses for his own pecuniary gain. Richard's clear employment chicanery provides this Court with a strong basis for dismissing all of Richard's false claims, and REC urges that this Court do so, and charge it's extensive court costs to Richard.

Submitted by:

_____
**FRED E. SALLEY, T.A.  (11665)**
**SALLEY & ASSOCIATES**
**P.O. Box 3549**
**77378 Hwy 1081 Cretien Annex**
**Covington, Louisiana  70434**
**Telephone: (985) 867-8830**
**Facsimile  (985) 867-8927**
**Counsel for Defendant, REC**
   Marine Logistics, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by facsimile, receipt requested, or by depositing same in the United States Postal Service, properly addressed and postage prepaid this 11th Day of March 2020

.

s/ Fred E. Salley

_____
**FRED E. SALLEY, T.A.  (11665)**