UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| REC Marine Logistics, LLC, Plaintiff | ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>NO.2:19-cv-11149-LMA-DMD |
| versus | | |
| DeQuincy R. Richard Defendant | | JUDGE Africk<br>MAGISTRATE (3) |

## MEMORANDUM ON MOTION TO REVIEW/APPEAL AWARD OF FEES AND SANCTIONS BY MAGISTRATE

The memorandum of REC, Offshore Transport Services, LLC, and Gulf Offshore Logistics, LLC, relates to and is in opposition to Richard's second serial request to the Magistrate for an award of fees and sanctions over the Rule 30(B)6 deposition of REC Marine Logistics, LLC.

As background, in late November 2019, Counsel filed a personal motion with the Court seeking a continuance based upon his serious, worsening, personal medical condition, and requesting an <u>initial</u> thirty days which would allow Counsel to improve, or seek other counsel to undertake this representation. That personal motion based on Counsel's serious illness, was denied, although without prejudice, by the Court in a ruling of 19th November 2019, and was sent to the Magistrate for her information.

Counsel has remained seriously ill and unable to physically or mentally respond to this litigation until recent days. Mr. Rhine has been aware of Counsel's illness since the original motion for a medical continuance filed in late November, and seems to have been taking advantage of it for personal gain.

Mr. Rhine first noticed, and then re-noticed, and re-scheduled, a Rule 30(B)6 with

different dates and parameters. Because the revised notice did not comply with Court rules, on 27th December 2019, Counsel filed a Rule 33(d)1 objection to the numerous irregularities in the revised late notice of the Rule 30(B)6 deposition. Counsel was seriously ill on 29th December 2019, and remained seriously ill into Monday, 30th December. Notwithstanding severe health problems, Counsel proceeded to Lockport, La., as arrangements had already been made the previous week to meet the witnesses, and to proceed with multiple depositions. Throughout the hours of the initial first deposition, Counsel was extremely ill, medically disabled, and simply should not have been there, but individually had no means, or power to change the circumstances.

The Magistrate also erroneously considered that the witness did not know everything. Of course not, he was the first of multiple witnesses. He knew large portions, but not all, of the data _requested_ by Mr. Rhine's 30(B)6 exhibit, which Rhine had just significantly altered from the original notice, during the final few days remaining before the depositions commenced. He was only the first witness, but not the last, of several anticipated witnesses. The record will show that Mr. Rhine (late in the day on Monday) concluded his questions to the first witness, Mr. --, and made no request to continue with a second witness, who was close by, waiting to be called in. Mr. Rhine concluded his own 30(B)6 deposition through his own actions; and did not request the _next_ witness, nor consult with Defendant Counsel about his actions.

Ordinarily, when Counsel in litigation become seriously ill, their requests for relief is granted, and sick or disabled lawyers are permitted time to recover, or time to substitute someone else. That did not occur here (see ruling of 19th November 2019), but Counsel tried to continue on despite serious physical and mental illness. The Magistrate acted as if she had never heard that Counsel was seriously ill. Her recent rulings, which have been or will be appealed, were

decided as if Counsel was vigorously healthy, had not filed a request for medical continuance, and was just acting badly because that was his usual practice.  This Court should well know that the specific conduct complained of during the 30(B)6 deposition was the results of continuing, serious illness, mental and physical fatigue.

Even more outstanding, is that before Counsel had even received the Magistrate's ruling, he had gotten at least three emails from writers seeking Counsel's comments before the publications involved had published the Magistrate's ruling, with their particular spin.  Even in the time of worldwide pandemic, none offered sympathy for Counsel's current serious illness, because it was never mentioned or considered by the Magistrate, who had been advised by the Court.  For example:

> "A Louisiana lawyer who interrupted a deposition 145 times and made 106 objections will have to pay for the conduct.
>
> U.S. Magistrate Judge Dana Douglas of New Orleans sanctioned lawyer Fred Salley of Covington, Louisiana, in a March 27 decision, Law360 reports.
>
> Salley will have to pay $1,000, along with attorney fees and costs associated with the sanctions motion and with a second deposition, Douglas said.
>
> Salley was representing REC Marine Logistics in a lawsuit seeking a declaratory judgment that it does not have to pay personal injury damages to deckhand DeQuincy Richard, who says he fell and injured himself on the job. Richard counterclaimed in a negligence lawsuit.
>
> A Marine Logistics representative testified during the contentious deposition.
>
> "Of the 255-page transcript of the deposition, Salley appears on 170 pages," Douglas wrote. "Salley objected 106 times, 52 of which were lengthy speaking objections. There are long, speaking objections that cover entire pages of the transcript. One speaking objection and Salley's attendant argument, which followed a question asking the deponent when an affidavit was signed, covers in excess of six pages of the transcript."
>
> Salley also instructed the witness not to answer 16 times, although he did not have a valid reason under the Federal Rules of Civil Procedure, Douglas said.
>
> At one point, Salley even accused Richard's lawyer, Eric Rhine, of committing a crime during the deposition. Douglas pointed to this exchange about unsigned affidavits and replacements provided to the court:
>
> Salley: You're asking about the replacements that were provided to the court? I'm just trying to find out what your angle is here.
>
> Rhine: If you'll let me ask questions, you'll find out, Fred.
>
> Salley: That's not the way we do it.

Rhine: That is how we do it. It's called a deposition.

Salley: We find out where you're going, and we object, if needed. We don't let you commit crimes and then, object.

Rhine: Please identify for the court what crime I have committed during this deposition.

Salley: I'll do that later.

Rhine: I will take your response as an inability to identify said crime.

Douglas also said Salley failed to prepare the witness, citing the witness' testimony that he had not spoken to ship personnel before the deposition.

The company and Salley did not oppose the sanctions motion.

Salley didn't immediately respond to a request for comment left by voicemail and email."

"Salley" did not oppose this motion before the Magistrate because he was sick, and he apparently did not ever receive it.

On the other hand, and considering the existing record, the transcript clearly proves that Counsel's conduct was <u>abnormal</u>, and demonstrates quite clearly that he was still quite ill. A person's civil conduct normally corresponds to their illness. Counsel was deathly ill. To lessen the likely consequences, Counsel had requested relief from the Court, when the condition was first manifesting. Counsel cannot claim that he did not anticipate or know that consequences would flow from the nature of his illness. That is precisely why the late November continuance was requested from the Court

Respectfully submitted:

BY: //Fred E. Salley
_____
**FRED E. SALLEY, T.A.   (11665)**
**SALLEY & ASSOCIATES**
**P.O. Box 3549**
**77378 Hwy 1081 Cretien Annex**
**Covington, Louisiana   70434**
**Telephone: (985) 867-8830**
**Facsimile  (985) 867-3368**
**Counsel for Defendants, REC**
Marine Logistics, LLC, *et. al*.