UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REC MARINE LOGISTICS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 19-11149** |
| **DEQUINCY R. RICHARD, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is DeQuincy R. Richard's ("Richard") motion[1] for partial summary judgment against REC Marine Logistics, LLC ("REC Marine") and Offshore Transport Services, LLC ("Offshore Transport"). For the following reasons, the motion is denied.

### I.

This action arises from REC Marine's request for declaratory relief from Richard's demand for maintenance and cure for injuries that Richard allegedly sustained as a deckhand employed on the M/V *Dustin Danos*.[2] Richard filed a counterclaim against REC Marine under the Jones Act and a third-party complaint against Offshore Transport and Gulf Offshore Logistics, LLC ("Gulf Offshore") under general maritime law.[3] Richard asserts that his injuries were caused by the

---

[1] R. Doc. No. 120.
[2] *See* R. Doc. No. 1.
[3] R. Doc. No. 4. At a June 29, 2020 teleconference with all parties, counsel for Richard clarified that his Jones Act claim is brought only against REC Marine, and his unseaworthiness claim is brought only against Offshore Transport and Gulf Offshore. *See* R. Doc. No. 129.

1

negligence of REC Marine and the unseaworthiness of the *Dustin Danos*.[4] Richard seeks damages for mental anguish, lost earnings, loss of earning capacity, medical expenses, and pain and suffering, as well as punitive damages.[5]

REC Marine and Offshore Transport deny liability as to Richard's claims, and they contend that Richard's injuries are, instead, the result of Richard's own intentional conduct and/or a pre-existing medical issue.[6]

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the Court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment satisfies its burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute

---

[4] R. Doc. No. 4, at 4. Richard's motion for partial summary judgment only requests relief against REC Marine and Offshore Transport. *See* R. Doc. No. 120.
[5] *Id.* at 5.
[6] *See* R. Doc. No. 1; R. Doc. No. 125.

of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted); *see* Fed. R. Civ. P. 56(c) The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) ("[The court] construe[s] all facts and inferences in the light most favorable to the nonmoving party.").

### III.

*i. Factual Background*

The parties agree that on the date of Richard's incident, November 6, 2018, REC Marine was the Jones Act employer of Richard, who was a deckhand aboard the *Dustin Danos*.[7] The parties also agree that on that day, REC Marine was the operator of the *Dustin Danos*, and Offshore Transport was the vessel's bare owner.[8]

According to Richard, he had been hired approximately two weeks prior to the incident, and, the parties agree, he joined the crew of the *Dustin Danos* the day before the incident occurred.[9] Richard alleges that on November 6, 2018, he was attempting to "catch a line" and secure the vessel to a platform in the Gulf of Mexico when he fell while walking down a set of stairs on the port side of the vessel's jump deck.[10] According to Richard, as he and Captain Sam McCain ("McCain") were performing this task, Richard descended the stairs, and the second step from the bottom "shifted," resulting in his loss of balance.[11] Richard alleges that the shifting step caused him to fall and hit the main deck, leading to injuries when he landed on his head, shoulder, and the right side of his body.[12]

---

[7] R. Doc. No. 120-1, at 1; R. Doc. No. 125-1, at 1; R. Doc. No. 71, at 7. Although there are typographical inconsistencies in the parties' submissions as to the date of the incident, the date in question is undisputed.

[8] R. Doc. No. 120-2, at 1; R. Doc. No. 125-1, at 1; R. Doc. No. 71, at 13.

[9] R. Doc. No. 120-9, at 1. Counsel for Richard advised the Court that Richard's declaration contains a typographical error—Richard joined the vessel's crew on November 5, 2018.

[10] *Id.*

[11] *Id.* at 2.

[12] *Id.*

4

McCain explained that on the day of the incident, both men were on the jump deck, which is three stairs up from the main deck.[13] According to McCain, after McCain threw the line, he saw Richard turn around to go down the stairs, and he observed Richard fall, hitting the main deck.[14] After Richard fell, McCain took Richard inside the cabin of the vessel to complete an incident report.[15]

McCain stated that he then returned to the stairs where Richard fell to "make sure there was no debris around the step that would have tripped him up" and to "ma[ke] sure that the steps weren't loose and that no welds were broken."[16] At his deposition, McCain stated that he did not observe any defects, although he did not take any photographs of the steps.[17] In a sworn affidavit submitted in opposition to Richard's motion for partial summary judgment, McCain explained that he had personally "checked" the jump deck stairs the day before the incident, and he found that the stairs and its handrail were "tight, staunch, readily useable, and secure in all respects."[18] McCain asserts that he was "readily aware of their condition" because

---

[13] R. Doc. No. 120-6, at 10.
[14] *Id.*
[15] *Id.* at 11.
[16] *Id.*
[17] *Id.* at 12.
[18] R. Doc. No. 125-2, at 2. In opposition to Richard's motion, REC Marine and Offshore Transport submitted an affidavit by Chris Holcombe ("Holcombe") that was not notarized, signed by him, or dated. *See* R. Doc. No. 125-4. Holcombe was the second captain on the *Dustin Danos* on the date of Richard's incident. The day after the instant motion was submitted, REC Marine and Offshore Transport refiled Holcombe's affidavit properly notarized, signed by him, and dated. R. Doc. No. 130. Notwithstanding, Holcombe's re-filed affidavit does not change the Court's conclusion that there are genuine issues of material fact with respect to Richard's claims, as discussed herein.

he "ha[s] to routinely check their condition," as he and other crew members "regularly use them."[19]

McCain acknowledged that it was his job as the captain of the vessel to determine whether there are any defects in the area in which his crew is working and to take any steps necessary to correct such defects.[20] Pursuant to the operations manual in effect at the time of Richard's incident, vessel captains have primary responsibility for all vessel maintenance.[21] Regular inspections must be completed to "discover damages and defects," and it is the captain's responsibility to ensure that defects are properly reported and repaired in accordance with company procedures.[22]

After his fall, Richard received medical treatment on board the vessel, and, according to Richard, he spoke with other crew members about the condition of the steps that allegedly caused his fall.[23]

According to Casey Curole ("Curole"), a port captain for Gulf Offshore, approximately two weeks after the incident, Curole conducted an inspection of the

---

[19] R. Doc. No. 125-2, at 2.
[20] R. Doc. No. 120-6, at 12.
[21] R. Doc. No. 120-12, at 4; R. Doc. No. 120-3, at 4, 7.
[22] *Id.* at 5.
[23] R. Doc. No. 120-9, at 2. Richard's recounting of statements from other crew members, relayed in his declaration submitted in support of his motion, may be excluded from consideration as hearsay. *See Smith v. Palafox*, 728 F. App'x 270, 276 (5th Cir. 2018) (explaining that "the district court did not err in declining to consider Smith's declarations" submitted in opposition to summary judgment motion because, *inter alia*, "much of the content of Smith's declarations constitutes inadmissible hearsay."); *see also Charles v. Consol. Fabrications Constr., Inc.*, 686 F. App'x 300, 302 (5th Cir. 2017) ("[T]he only relevant portion of the Turner affidavit contained inadmissible hearsay and thus did not create a fact dispute."). Richard has not presented any argument to support a finding that such statements are admissible under the Federal Rules of Evidence. Accordingly, the Court will not consider them.

6

jump deck stairs on the *Dustin Danos* at McCain's request.[24] In a sworn affidavit submitted in opposition to the instant motion, Curole explained that the purpose was to inspect for "broken parts, looseness, further securing, or any need for repairs or replacement."[25] Curole asserted that his inspection "found no structural, mechanical, or other looseness or damage of any kind whatever."[26] In addition, Curole determined that the steps were "tight, staunch, structurally and mechanically sound in every respect."[27]

In contrast to the alleged findings from McCain's and Curole's inspections, Richard's professional safety expert, Robert E. Borison ("Borison"), concluded that the jump deck stairs presented an unsafe condition.[28] On January 29, 2020, Borison performed an inspection of the *Dustin Danos*, including the stairs on which Richard fell.[29] As part of his investigation, Borison conducted a "Root Cause Analysis" of

---

[24] *See* R. Doc. No. 125-3, at 2; R. Doc. No. 125-2, at 1.
[25] R. Doc. No. 125-3, at 2.
[26] R. Doc. No. 125-2, at 2.
[27] *Id.*
[28] *See* R. Doc. No. 120-11. Borison's conclusions are set forth in his expert report submitted in support of Richard's motion for partial summary judgment. Expert reports may be considered as competent summary judgment evidence if the opinions expressed in them can be placed in admissible form at trial. *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). Borison's report is properly considered here because it may be admissible pending a proper evidentiary foundation at trial.
[29] R. Doc. No. 120-11, at 2. Based on the discovery responses from REC Marine, as well as the deposition testimony of McCain and REC Marine's corporate representative Blaine Russell, Richard asserts that the vessel was in the same condition on the date of Borison's inspection as on the date of Richard's accident. *See* R. Doc. No. 120-1, at 12–13. REC Marine and Offshore Transport do not dispute this assertion, although they contend that Borison's findings concerning the condition of the stairs, made over a year after Richard's incident, are "not relevant to conditions that existed in November 2018." R. Doc. No. 125-1, at 4.

Richard's incident and prepared an expert report outlining his findings with respect to problems and deficiencies relating to the incident.[30] Borison concluded, based on his training and experience, that the steps on which Richard fell were defective because of problems with the fiberglass grating treads on the stairs.[31] According to Borison, the fiberglass grating treads on some of the steps "were not properly affixed to the original stair-treads."[32] When Borison inspected the stairs, he observed two loose fiberglass grating treads on the second step from the bottom.[33] According to Borison, the loosening and sliding of the fiberglass treads could "produce[] an unsafe stairway."[34]

### ii. Jones Act Negligence

The Jones Act, 46 U.S.C. § 30104, "provide[s] a remedy to seamen and their survivors to sue for compensation for personal injury and wrongful death based on the negligence of the seamen's employer." *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 386 (5th Cir. 2014). The standard of care applicable to the employer is that "of ordinary prudence under the circumstances." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997) (en banc). "An employer "has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition.'" *Lett v. Omega Protein, Inc.*, 487 F. App'x 839, 843 (5th Cir. 2012) (quoting 1 Admiralty & Maritime Law § 6–22 (5th ed.)).

---

[30] R. Doc. No. 120-11, at 7.
[31] *Id.* at 9.
[32] *Id.* at 7.
[33] *Id.*
[34] *Id.* at 10.

8

A seaman is entitled to recovery under the Jones Act "if his employer's negligence is the cause, in whole or in part, of his injury." *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 205 (5th Cir. 2019) (quoting *Randle v. Crosby Tugs, L.L.C.*, 911 F.3d 280, 283 (5th Cir. 2018)). The standard of causation in Jones Act cases is "not demanding" and only requires "that employer negligence played *any part, even the slightest*, in producing the injury." *Id.* (quoting *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008)); *see also Grab v. Traylor Bros.*, 796 F. Supp. 2d 788, 794 (E.D. La. 2011) (Lemmon, J.) ("The terms 'slightest' and 'featherweight' have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury.") (citing *Gautreaux*, 107 F.3d at 335 and *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1352 (5th Cir. 1988)), *aff'd sub nom. Grab v. Boh Bros. Const. Co.*, 506 F. App'x 271 (5th Cir. 2013).[35]

Under the Jones Act, an "employer must have notice and the opportunity to correct an unsafe condition before liability attaches." *Luwisch*, 956 F.3d at 326 (quoting *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)). "[T]he standard of care is not what the employer subjectively knew, but rather what it objectively should have known.'" *Id.* (quoting *Colburn*, 883 F.2d at 374). Constructive

---

[35] Contributory negligence does not preclude recovery under the Jones Act, and a seaman may still recover if his injury resulted from his own failure to perform a duty of his employment. *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 328 (5th Cir. 2020) (per curiam). "Under the Jones Act and the law of unseaworthiness, contributory negligence, however gross, does not bar recovery, but only mitigates damages." *Id.* (quoting *Offshore Express*, 845 F.2d at 1354). Accordingly, the Court will not consider REC Marine and Offshore Transport's argument concerning Richard's alleged failure to hold onto the handrail of the stairs when evaluating Richard's negligence claim against REC Marine. *See* R. Doc. No. 125, at 5.

knowledge may be demonstrated by showing that "the negligent condition could have been discovered through the exercise of reasonable diligence." *Id.* (quoting *Brister v. A.W.I., Inc.*, 946 F.2d 350, 356 (5th Cir. 1991)).

Richard alleges that REC Marine was negligent by failing to provide a reasonably safe place to work.[36] He asserts that such negligence is demonstrated by REC Marine's alleged failure to "inspect and/or repair the defective step" on which he fell.[37] Richard also argues that REC Marine was negligent because it failed to perform a Job Safety Analysis before the incident, and it failed to provide him with training regarding the specific task he was performing and potential hazards he might encounter as a deckhand.[38]

The Court finds that there is a genuine dispute of material fact as to REC Marine's alleged negligence.[39] McCain stated that he conducted regular inspections

---

[36] R. Doc. No. 120-1, at 19.
[37] *Id.* at 21.
[38] *See id.* at 20.
[39] As the Court has previously noted, discovery in this matter has been far from expeditious. *See* R. Doc. No. 61. Reflective of some of the difficulties encountered, REC Marine and the third-party defendants failed to respond to Richard's requests for admissions, which Richard served on October 4, 2019. *See* R. Doc. No. 79; R. Doc. No. 120-4, R. Doc. No. 120-5. Consequently, the United States Magistrate Judge deemed Richard's requests for admissions admitted pursuant to Federal Rule of Civil Procedure 36, which provides that "[a]ny matter admitted . . . is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b); *see* R. Doc. No. 79. The Fifth Circuit has explained that "a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). REC Marine and Offshore Transport have made no such motion.

Notwithstanding the Magistrate Judge's ruling with respect to Richard's requests for admissions, "requests for admissions are properly used for facts or facts as applied to law, not pure legal conclusions." *Warnecke v. Scott*, 79 F. App'x 5, 6 (5th Cir. 2003);

of the steps and found that they were "secure in all respects," including on the day before Richard's incident.[40] Curole also asserted that he did not find any structural

---

*see Carney*, 258 F.3d at 419 ("Requests for admissions cannot be used to compel an admission of a conclusion of law.") (quoting *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999)); *Thompson v. Beasley*, 309 F.R.D. 236, 241 (N.D. Miss. 2015) ("While [Rule 36(c)] allows a party to request an admission of 'the application of law to fact,' '[r]equests for purely legal conclusions . . . are generally not permitted.'") (citation omitted). Therefore, the Court will not consider as admitted any pure legal conclusions set forth in Richard's requests for admissions. Although Richard argues that REC Marine admitted that it was "negligent in causing the injuries sustained by Richard," and Gulf Offshore admitted that the *Dustin Danos* "was unseaworthy at the time of [the] incident," the findings of negligence and unseaworthiness are legal conclusions that the Court declines to consider admitted pursuant to Rule 36 to establish the absence of genuine issues of material fact. *See, e.g., Acadia Ins. Co. v. Hinds Cty. Sch. Dist.*, 582 F. App'x 384, 395 (5th Cir. 2014) (Clement, J., concurring) ("'Negligence' is not a factual allegation, but a legal conclusion . . . ."); *Fulford v. Manson Const. Co.*, No. 09-3946, 2010 WL 1903865, at *1 (E.D. La. May 7, 2010) (Zainey, J.) ("The question of whether a party's acts or omissions constitute 'negligence' under the law calls for a legal conclusion."). The Court acknowledges, however, that causation may be established by an admission. *See Le v. Cheesecake Factory Restaurants Inc.*, No. 06-20006, 2007 WL 715260, at *4 (5th Cir. Mar. 6, 2007). Notwithstanding, REC Marine may argue that Richard was contributorily negligent.

The admission addressed in *Carney* is distinguishable from the legal conclusions that Richard argues have been "admitted" under Rule 36. *See* 258 F.3d at 416–18. In *Carney*, the Fifth Circuit affirmed the grant of summary judgment based on Carney's "Rule 36(a) deemed admission that the proof of claim filed by the IRS in his bankruptcy proceeding accurately described his tax obligations." *Id.* at 416. The specific admission against Carney stated, "You owe the [IRS] the taxes reflected on the Proof of Claim attached hereto as Government Exhibit 1." *Id.* at 418. Because this "deemed admission is conclusive as to the central *factual* issue in [Carney's] case," the Fifth Circuit found that summary judgment was appropriate. *Id.* at 421 (emphasis added). Richard's requests for an admission that REC was negligent under the Jones Act, and an admission that the vessel was unseaworthy, are legal conclusions—not central factual issues.

[40] R. Doc. No. 125-3, at 2. Richard argues that the Court should not give any weight to McCain's and Curole's affidavits because the opposition to the instant motion did not cite to any of the information contained in the affidavits. *See* R. Doc. No. 128. This contention is inaccurate, as the memorandum in opposition and the response to Richard's statement of uncontested material facts do cite to specific facts in McCain's and Curole's affidavits. *See* R, Doc. No. 125, at 5, 6; R. Doc. 125-1, at 2, 3, 4, 6.

or mechanical damage, or any "looseness," when he inspected the steps approximately two weeks after Richard's incident.[41]

Based on the conflicting evidence presented, there are genuine issues of material fact as to whether the steps were defective and whether REC Marine had notice of and the opportunity to correct the allegedly unsafe condition that Richard contends caused his injuries.[42] Therefore, summary judgment must be denied as to Richard's Jones Act negligence claim against REC Marine.

### iii. Unseaworthiness

"General maritime law imposes a duty upon shipowners to provide a seaworthy vessel." *Luwisch*, 956 F.3d at 326 (quoting *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 74 (5th Cir. 1980)). "Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Gowdy*, 925 F.3d at 205 (quoting *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012)). Unlike a Jones Act negligence claim, unseaworthiness does not require notice. *Luwisch*, 956 F.3d at 328 n.1; *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) ("[T]he shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability.").

"A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman." *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007).

---

[41] R. Doc. No. 125-2, at 2.
[42] The Court finds Richard's arguments concerning REC Marine's alleged failure to train or warn unavailing, as he not presented any specific evidence demonstrating that the lack of training or the absence of a Job Safety Analysis played any part in any injuries suffered as a result of the fall.

12

The vessel may be unseaworthy "if its 'gear [is] defective,' its 'appurtenances [are] in disrepair,' or its 'crew [is] unfit.'" *Lett*, 487 F. App'x at 844 (5th Cir. 2012) (quoting *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971)). The injured seaman must prove that the owner failed to provide a vessel, including her equipment and crew, that is reasonably fit and safe for the purposes for which it is to be used. *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (citing *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206 (1963)).

To succeed on an unseaworthiness claim, the plaintiff must also establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy. *Jackson*, 245 F.3d at 527 (citing *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir. 1980)). The standard of causation for an unseaworthiness claim is more demanding than for a Jones Act negligence claim and requires proof of proximate cause. *Gowdy*, 925 F.3d at 208–09. The plaintiff must prove "that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Luwisch*, 956 F.3d at 326 (quoting *Offshore Express*, 845 F.2d at 1354).[43]

For the reasons previously assigned, the Court finds that summary judgment must also be denied as to Richard's unseaworthiness claim against Offshore

---

[43] Unlike a Jones Act negligence claim, "[l]iability under the doctrine of unseaworthiness does not rest upon fault or negligence." *Johnson*, 845 F.2d at 1354.

13

Transport.⁴⁴ As with the Jones Act negligence claim, the Court construes all evidence in the light most favorable to Offshore Transport, drawing all reasonable inferences in Offshore Transport's favor. *See Anderson*, 477 U.S. at 248; *Axon Pressure*, 951 F.3d at 255; *see also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) ("When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."). Therefore, Richard has not demonstrated the absence of a genuine issue of material fact with respect to his claim of unseaworthiness.

## IV.

Based on the evidence presented, the Court finds that there are genuine issues of material fact with respect to Richard's Jones Act negligence claim against REC Marine and Richard's unseaworthiness claim against Offshore Transport.

Therefore,

**IT IS ORDERED** that DeQuincy R. Richard's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, July 1, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

⁴⁴ As the Court previously explained, the Court does not deem as admitted requests for admissions with respect to the legal conclusion that the vessel was unseaworthy.